Good morning, Your Honor. This is a case where the only percipient testimony that convicted the petitioner in this case of the murder of Daly was Mondler's statement to Wilbur. That was the only percipient witness evidence that was presented at this trial, and that was Accomplice Mondler's adequate statements to Wilbur about a week after the killing. That really entirely shifted the blame to the petitioner for this murder, and was the only percipient witness. JUSTICE KENNEDY Well, it really didn't shift the blame. He also said he participated, too, didn't he? CAREY He said, we – he made the statement – JUSTICE ANTHONY KENNEDY We killed Daly. CAREY Yeah. We killed Rick Daly. And then he proceeded to describe how Petitioner hit Mr. Daly with his hammer. But there wasn't – there was no factual – there wasn't any factual statement there as to what Mondler's participation in the crime was, other than his presence, and potentially not even – well, yeah, his presence. JUSTICE KENNEDY So you're arguing it was not a declaration against penal interest at all? CAREY I'm not – I'm not arguing that. I think that the inference – I mean, he said we – you could draw many different conclusions from the statement, we killed Daly, that then follows with no factual evidence implicating Daly – implicating Mondler in Daly's death. I mean, Mondler didn't say, I held him, you know, I opened the door, I helped take his body out. The we is – he was part of the statement. JUSTICE KENNEDY Without that kind of detail or backup, the statement would fail the residual trustworthiness test. Is that correct? CAREY That's correct. That's correct. Because there's no – I mean, the we – they're all members of this gang. And this gang mentality is, you know, I think that a reasonable person could believe that Mondler, who was present at the time, may have said a week later to Wilburn, you know, we killed Daly, merely implicating himself in being present there, not doing anything. And that under the law, mere presence and failure to prevent a crime, although may give some moral responsibility, and maybe Mondler feels moral responsibility and that's why he said we killed him. But, you know, he didn't – he didn't say that he did anything. And that – that's the problem. And the real problem here, though, is that the State court's decision trampled Lilly v. Virginia. The State court didn't consider at all, when you look at the opinion, did not consider the presumption that this statement should not come into evidence. It did not consider that presumption, did not – it not – did not discuss the presumption. It did not give – and the presumption is under Lilly that – that an accomplice is – ROBERTS It's a hearsay statement. It's – it's not to come in unless there is some firmly rooted exception or it's – would satisfy a hearsay exception and it has a residual – passes a residual custody in this case. So the State court finds it – it's subject to the statement against penal interest for that portion for admissible hearsay. And then it goes on to the other test. Hasn't it done the function of the same thing as saying, well, presumptively it can't come in, but because of these other circumstances it can? Well, I don't believe it has, Your Honor. The court – the court found that it was inherently trustworthy. But what Lilly tells us is that, one, the presumption is on the – is on the government, and, two, that it's not merely a question of whether it's a trustworthy statement, but, quote, so trustworthy that cross-examination would be superfluous. That's U.S. Supreme Court law. It never – the State court never discussed what – how cross-examination of Mondler – Mondler would be superfluous. And I don't believe any reasonable person could conclude that when you have a precipiate witness to the killing and the only precipiate witness whose testimony was used as evidence in this trial, that cross-examination of that person would be, quote, superfluous. And the court just – the State court never discussed – it went into this, you know, well, it's reliable because he implicated himself. He said we kill daily. You know, it was against penal interest, and it has initial reliability. It was – although it was not made, you know, moments after the event or a day after the event, it was made fairly recently. It was made a week after the event. But as the Crawford Supreme Court just found – not just found, but just stated that this reliability, you know, in Bishop, reliability can be – I think the court – the Supreme Court just used the term manipulated. I mean, it just – it can't be defined. I mean, how do you – you know, I could argue here that it's not reliable. It was a week later. The police – he was on the lam. I mean, he was at – he implicated himself as being a precipiate witness, and he said, you know, we – he's clearly someone that the police are going to be looking for, at least in his own eyes. Okay, regardless of whether the police – you know, police did not issue an arrest warrant for him, but in Maulner's eyes, this is a week after the event, and he's – clearly in his eyes, he's concerned about his own criminal liability. Doesn't it become a significant fact that he's not talking to the cops, he's talking to his friend? Right. And that's why, you know, in the letter briefs, we agree, A.G. and I, that it's not a testimonial. It doesn't appear to be testimonial under Crawford. Well, I mean, it's more than just not testimonial. That's why it's reliable. Well, it was – it was – I'm not – I'm not – I mean, I don't even think the Court has to get to that issue. I mean, what the Crawford Court says, we can all debate the reliability. I mean, it was a week after the incident, he didn't give facts that would directly implicate him, other than, you know, the conclusory statement that, you know, we killed him. I mean, our marching orders here are to decide whether the California Court of Appeals decision was contrary to. So they find significant that the guy's not in custody. They find significant that he spoke from, what do they call it, a need to unburden himself. Right. To unburden himself of this. He wasn't trying to convince the cops that somebody else did it and that he's an innocent. And he did, in fact, implicate himself. I mean, we have to find that this is not only wrong, but unreasonable. But the State court never discussed how cross-examination would be surplus. I mean, they never even discussed that issue. And we can – I don't think anyone – and that's how – that's the reason why the State court's opinion was contrary to and in a reasonable application of the established U.S. Supreme Court law. Where do you get the requirement that they have to find that it's superfluous? In Lilly v. Virginia at pages – 119 Supreme Court at pages 1899. That seems to me would be an impossible burden. I mean, how could anybody ever find that cross-examination would be superfluous? In any case, I mean, how could it be? I mean, that's why the burden is so high when you have an accomplice. That means we have an accomplice's statement. That means no hearsay could ever be admissible under any exception. Well, no. I mean, you've got – no. This deals with an accomplice. This deals with someone who – with an accomplice's statement, someone that him or herself has potential liability for the crime. So that, you know, in that limited circumstance, that's why Lilly v. Virginia recognized that in that limited circumstance where you have an accomplice's statement that is, you know, shifting blame, it clearly shifted blame here. He said he went to town with a hammer. No one else said that at the trial. There was no recipient witness at that trial. When you've got that type of damaging evidence and shifting the blame by an accomplice, a person that was there at the scene and potentially has criminal liability, in that limited situation, that's why the Supreme Court has recognized it, you've got to show that. And I agree. I think it's – it would be virtually impossible in those limited circumstances to show that it would be – that cross-examination would be superfluous. What do you make of the well-written decision of Boone? Well, there the – there was – there was – there were – there was facts. The accomplice stated facts that implicated him directly in the – in the criminal liability. I mean, here we just got the conclusory statement. I believe that's exactly what it was the accomplice said. But the accomplice had stated facts that directly – you know, not conclusory statements. They were facts that the – that the accomplice stated that implicated himself in criminal liability. And when you've got that type of situation, I would agree with the Court. You've got – but you don't have that when you – you know, he says – the only thing he says that, you know, potentially incriminates himself is this, you know, we killed Rick. You know, we killed Rick Daly. But that had equally in this situation simply mean, you know, I was there. I'm a gang member with, you know – and I didn't stop it. And mere – you know, the – you know, mere presence of the scene and not stopping the offense is not – is not a crime. So it may simply reflect his – his moral – his feeling of moral culpability, but not his criminal culpability. I think if you want to resume your time. Thank you very much, sir. Good morning, Your Honors. Deputy Attorney General Noah Hill on behalf of Respondent. May it please the Court. It is important to frame this case in – in the context of the AEDPA. This is a case of – of EDPA. Okay. This is a case of the Supreme Court's duty to determine whether or not the State Court's decision was unreasonable, whether it's factual determination, whether its application of Supreme Court authority, in this case Lilly, was unreasonable. As a district court found, it was not unreasonable. It was a rather straightforward application of Lilly and of Boone and, of course, of Roberts in the line of cases that – that we've discussed, whether or not cross-examination would be of marginal utility. Yes, Your Honor. How do you respond to that? Because that is a troubling – it is a high standard. It is a high standard. That is true, but it is not the test that this Court is to apply. The adequate indicia of reliability test is what the Supreme Court has crafted in terms of determining whether or not there has been a violation of the Confrontation Clause. Now, Petitioner suggests that in Lilly, this rule was articulated, that cross-examination would have to be superfluous, and that's not the case. In Idaho v. Wright, the United States Supreme Court made the statement that, in discussing the adequate indicia of reliability test, that it would have to – adversarial testing would have to add a B of as little to the reliability of the statement. But it wasn't crafting a secondary or even a primary test for Confrontation Clause analysis, and that's made clear recently in Crawford, when it said – when, in conclusion, it leaves Roberts in place and says, this is a determination for another day. It may well be that the Confrontation Clause doesn't even apply at all to these sorts of statements, whether there's an accomplice involved or not. So what we are left with from the United States Supreme Court, and that is the precedent that is important under the standard and the framework that this case must be analyzed under, and that is what the State court applied. Are – were there adequate indicia of reliability in the statement? And the State court found that he's making this close in time, that Mondler's making this statement close in time to a very good friend, who doesn't even know that Mr. Daley's been murdered, tells – is bothered, doesn't – doesn't come to the friend directly. He's upset. She senses it, asks him, what's bothering you? What's bothering you? And he says, we killed – we killed Rick Daley. He does say that. He says, we – I can't believe we killed Rick Daley like that. But he's – he's – he could very well have been in cross-examination, could have brought this out, referring to we and the other people or the gang or whoever it was, because he goes on to say that it was the other guy who took the hammer to him and – That's correct. – got out of control with the hammer. It wasn't him. It wasn't him who wielded the hammer. But like in many crimes, when one individual holds a gun and others have other roles, Mr. Mondler's role can be determined from the fact, well, certainly one of the perpetrators wielded the hammer. It's important to keep in mind that Mr. Daley was killed not only by blows to the head from a hammer, but because he had a scarf stuffed into his mouth, his airway was constricted, and he could not breathe. He was set on fire at that initial time. He also suffered blows to the head that were inconsistent with a hammer. His body was burned and he was bound. All of these things suggest that we killed Rick Daley. Ghost Petitioner had the hammer. Well, certainly one's role is not standing around feeling morally culpable, as I said, and I don't think there's any real evidence to suggest that whatsoever at any place in the State court record. What you have is a statement that is made to a friend, made in confidence, exactly like the statement in the well-written opinion in Boone. This case is very similar to that. Certainly we've had Crawford that has come down since then. Crawford doesn't directly implicate this case. It's a nontestimonial statement. But you use the same framework of Ohio v. Roberts, use the same framework of Lilly, and it can't be said that the State court's determination was unreasonable  And that's the test. What was the other evidence of Landrum's guilt? Well, you have Ms. Wilborn's personal observations of the blood spot on the floor in the kitchen. You have her observations of Petitioner striking Mr. Daley on the date of the incident. Right outside the door that Mondler was standing behind Mr. Daley, someone else was holding the door to the kitchen where the murder occurred open. She left the scene at that point. Now, subsequently, you have Ms. Mina observe Mr., excuse me, Petitioner announce that he has just beaten up Mr. Daley. Petitioner then gets into a car that is owned and driven by a Scott Kimball that appears weighted down in the trunk. That car departs and returns approximately 40 to 45 minutes later, no longer weighted down in the trunk. Blood tests subsequently confirm the presence of human blood in the trunk. 40 minutes is the length of time that it would take an individual to drive from the residence to the location Mr. Daley's body was found dumped and burned and to return to the scene. In addition, there were claw hammers found in the presence or at the homes on the Mellon residence. And I believe that that is the sum and substance of the evidence against Petitioner. Certainly, the statement of Mondler is the most damning evidence and the central evidence in this case. And it was given, if I may address the Petitioner's contention, that there was no presumption that the statement should be excluded. That simply isn't the case. The trial court conducted a lengthy hearing on this issue. It determined the hearsay exception applicable in the instant case and then went on to hold an additional hearing. That's not enough. We need to have the adequate indicia of reliability. We went on to make its findings and, of course, the state court affirmed those findings on the basis of Lilly, which was published between the time of trial and the time of the direct appeal in this case. And those findings were wholly consistent, wholly reasonable findings. And because of that, Petitioner has not met his burden for habeas relief in this case. Unless this Court has further questions. Thank you, Mr. Haney. We've got about a half a minute left. We'll round it up to a minute and a half. Thank you very much, Your Honor. On page 16 of Pelley's brief, in Davis v. Alaska, U.S. Supreme Court states that when the cross-examination is most important, when the key witness for the prosecution is that – is most important when the witness is the key prosecution evidence. And that's this case. A defense counsel would want to cross-examine Mondler about whether Daley had a weapon, perhaps, that he pointed at someone in the room. Maybe it was a partial self-defense. We didn't have any of that evidence. I mean, we couldn't have had that evidence. It was – and he was the key prosecution witness. And Lilly is absolutely on point about cross-examination. There has to be a showing that cross-examination, quote, would be superfluous. The U.S. Supreme Court has said that. It was never discussed in the trial court. And it was contrary to their opinion. Therefore, the State opinion was contrary and an unreasonable application of Lilly. And, you know, the weight of the evidence on page – actually, it's record 13. The court of appeal here says, Mellon stated Willborn had told Mellon that Kimball, Ghost, and Piazza were responsible for Daley's death, not Landrum. Landrum's not there. That's on page 13 of the court of appeal's opinion. Actually, it's record 13 as well. Kimball drove the BMW. Kimball is the one that drove – so Mellon stated in a videotaped interview, had told – had stated that Willborn had told Mellon that Kimball, Ghost, and Piazza were responsible for Daley's death. So you've got – and Kimball's the one in the BMW. Landrum was on a bike. He came up when this BMW was weighted down, and everyone saw this weighted down with what appeared to be a body in the trunk. It was Landrum, drove up, arrived in a bicycle, and it was Kimball's BMW, and three people exited Kimball's BMW. And that wasn't Landrum. Submit the matter. Questions? I just want to thank you for your candor and your letter brief on Crawford House that you indicated that it didn't apply because this was not – that was actually helpful. Thank you. Thank you very much, Your Honor. Our thanks to both counsel. The case disargued is submitted. 03-557-84 Stevenson v. Lewis is submitted on the briefs. 03-504-25 United States v. Teague has been stricken from the calendar, leaving then the
judges: Thompson, Silverman, Wardlaw